```
 1              UNITED STATES DISTRICT COURT

 2          EASTERN DISTRICT OF NORTH CAROLINA

 3                  EASTERN DIVISION

 4

 5   UNITED STATES OF AMERICA  )

 6                             )

 7                             )

 8         V.                  ) 4:12-CR-57-D-2

 9                             )

10                             )

11   DARIEL TRAVOINTE HADDOCK  )

12

13          TRANSCRIPT OF SENTENCING PROCEEDINGS

14                    October 1, 2014

15               1:01 p.m. - 1:38 p.m.

16     Before Chief District Judge James C. Dever III

17

18   APPEARANCES:
        For the Government:
19      John H. Bennett, Esquire
        Assistant U.S. Attorney
20      310 New Bern Avenue, Suite 800
        Raleigh, NC 27601
21
        For the Defendant:
22      Thomas Courtland Manning, Esquire
        1312 Annapolis Drive, Suite 203
23      Raleigh, NC 27608

24   Reported by: Leslie Christian

25   Stenograph with Computer Aided Transcription
```

ORIGINAL

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 1 of 30

 1                    P R O C E E D I N G S

 2                    THE COURT:  Good afternoon and welcome

 3    to the United States District Court for the Eastern

 4    District of North Carolina.  We're here for the

 5    sentencing of Mr. Haddock.  Good afternoon,

 6    Mr. Bennett.

 7                    MR. BENNETT:  Good afternoon, Your

 8    Honor.

 9                    THE COURT:  Is the United States

10    ready?

11                    MR. MANNING:  We are, Your Honor.  And

12    with me are assistant district attorneys Colleen

13    Janssen and Matt Lively who are both involved in the

14    state case in this matter.

15                    THE COURT:  Good afternoon,

16    Mr. Manning.  Are you and Mr. Haddock ready to proceed?

17                    MR. MANNING:  Yes, Your Honor, we're

18    ready to go.

19                    THE COURT:  At this time I would ask

20    that Mr. Haddock be sworn or affirmed.

21

22                    DARIEL TRAVOINTE HADDOCK,

23    was duly sworn or affirmed.

24

25                    THE COURT:  Mr. Haddock, do you

**Huseby, Inc.**                          **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**      **(704) 333-9889**
Case 4:12-cr-00057-D  Document 176  Filed 01/16/15  Page 2 of 30

1  understand that having been sworn that your answers to

2  my questions are subject to the penalty of perjury?

3                    MR. HADDOCK:  Yes, sir.

4                    THE COURT:  Have you taken any kind of

5  medicine or substance in the last 48 hours that would

6  affect your ability to hear and understand these

7  proceedings?

8                    MR. HADDOCK:  No.

9                    THE COURT:  Do you know why you're

10  here today?

11                    MR. HADDOCK:  Yes.

12                    THE COURT:  Mr. Manning, do you have

13  any reason to doubt Mr. Haddock's competence to go

14  forward today?

15                    MR. MANNING:  No, Your Honor.

16                    THE COURT:  Does the government have

17  any reason to doubt Mr. Haddock's competence to go

18  forward today?

19                    MR. BENNETT:  No, Your Honor.

20                    THE COURT:  Based on Mr. Haddock's

21  answers to my questions and my observations of

22  Mr. Haddock and the answers from counsel I find that

23  Mr. Haddock is competent to go forward here today.

24                    Mr. Haddock, as you know, you're here

25  today having entered a plea of guilty to the

**Huseby, Inc.**                                    **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**    **(704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 3 of 30

1   interference of commerce by robbery and aiding and

2   abetting and using or carrying a firearm during the

3   relation of criminal violence and aiding and abetting.

4   You have pleaded guilty to those charges in this court.

5   In light of some cases from the Supreme Court of the

6   United States including the Booker, Rita, Gall,

7   Kimbrough, Spears and Nelson cases the sentencing

8   guidelines are no longer mandatory, they're advisory.

9   Nevertheless, in accordance with those cases and some

10  cases from the Fourth Circuit interpreting them

11  including the Carter, Pauly and Evans cases a

12  sentencing court still must take into account the now

13  advisory guidelines.

14              The Court does this by initially

15  making findings of fact and calculating the advisory

16  guideline range.  The Court may consider any motion

17  that may be made that might move that range either up

18  or down.  The Court may consider all arguments that Mr.

19  Manning makes on your behalf, any statement you would

20  like to make, any arguments of the Assistant United

21  States Attorney in determining your sentence as you now

22  sit here in court.  That will be the process we'll

23  follow.  Mr. Manning, did you receive a copy of the

24  presentence report?

25              MR. MANNING:  We did, Your Honor.

1                        THE COURT:  Mr. Haddock, did you

2     receive a copy of that report, sir?

3                        MR. HADDOCK:  Yes.

4                        THE COURT:  And did you speak with

5     your lawyer Mr. Manning about the report?

6                        MR. HADDOCK:  Yes.

7                        THE COURT:  At this time the Court

8     directs that the presentence report be placed in the

9     record under seal in accordance with the Federal Rules

10    of Criminal Procedure 32.  The Court accepts as

11    accurate the presentence report except its matters in

12    dispute as set forth in the addendum.

13                       I have reviewed the entire report

14    including the addendum.  The addendum indicates there

15    are no objections from either the government or the

16    defense.  Is that still the case, Mr. Manning, no

17    objections from the defense?

18                       MR. MANNING:  No objections.

19                       THE COURT:  Is that correct,

20    Mr. Haddock?

21                       MR. HADDOCK:  Yes.

22                       THE COURT:  No objections from the

23    government?

24                       MR. BENNETT:  No, Your Honor.

25                       THE COURT:  And, as I understand it,

**Huseby, Inc.**                              **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208        (704) 333-9889**
Case 4:12-cr-00057-D  Document 176  Filed 01/16/15  Page 5 of 30

1   there are some developments with respect to paragraph

2   19 the pending charges; the paragraph in the report

3   concerning the Wake County charges.

4                    MR. MANNING:  Your Honor, those have

5   been resolved and --

6                    THE COURT:  The murder charge was

7   dismissed or is to be dismissed?

8                    MR. MANNING:  I'm going to let Ms.

9   Janssen give you more detail as to what's happening

10  with the state charges.  She's obviously in a much

11  better position than I am.

12                   THE COURT:  Okay.  Good afternoon, Ms.

13  Janssen.

14                   MS. JANSSEN:  Good afternoon, sir.

15                   THE COURT:  Good afternoon.

16                   MS. JANSSEN:  Currently the murder

17  charge has been dismissed.  It was dismissed quite some

18  time ago.  In that same file number the defendant plead

19  guilty to one count of armed robbery and four

20  additional counts of armed robbery for separate and

21  unrelated events in the homicide.  So five total.

22                   He has plead guilty to those and has

23  entered into a plea.  He has not been sentenced yet.

24  So we anticipate as soon as this sentencing is done

25  bringing him into state court and resolving those

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 6 of 30

1  matters and entering final judgment.

2          THE COURT:  Thank you, ma'am.  Do you

3  want to add anything to that, Mr. Manning?

4          MR. MANNING:  No, Your Honor.

5          THE COURT:  At this time I'll hear

6  from -- well, I'll calculate the advisory guideline

7  range and announce what that is.  The total offense

8  level is 21, the criminal history category is two, the

9  advisory guideline range on Count 1 is 41 to 51 months.

10  Count 2 is 120 months consecutive to whatever the

11  sentencing on Count 1 is.  Does the government object

12  to that advisory guideline range?

13          MR. BENNETT:  No, Your Honor.

14          THE COURT:  Does the defendant object

15  to that advisory guideline range?

16          MR. MANNING:  No, Your Honor.

17          THE COURT:  I will now hear from Mr.

18  Bennett in connection with the government's motion

19  under Section 5K1.1, 18 U.S.C. Section 3553(e).

20          MR. BENNETT:  Thank you, Your Honor.

21  As to the specifics of the cooperation again in the

22  state matter I'm going to turn to Ms. Janssen and allow

23  her to detail it for you.

24          THE COURT:  Okay.

25          MS. JANSSEN:  Your Honor, as you know,

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 7 of 30

1  the defendant was charged initially in state court with

2  a robbery and a homicide that took place on December

3  the 2nd of 2011.  Over the course of him being charged

4  with that and then coming forward and giving some

5  information and a statement in connection with that as

6  well as some other robberies it was finally determined

7  that this defendant was actually not present nor had

8  any involvement in the robbery and homicide on

9  December 2nd of 2011 as we originally had supposed.

10              The robbery and homicide that took

11  place, took place at the Tobacco Mart on Capital

12  Boulevard here in Raleigh on December 2nd.  There was a

13  surveillance videotape that show the details of two

14  individuals coming in, the robbery and homicide

15  happening.  Once we had actually identified the group

16  of suspects that we were looking at and had interviewed

17  a number of them initial information was that there

18  were two individuals that had gone in and two

19  individuals had waited outside in a vehicle -- this

20  defendant being one of them.

21              Subsequently, Mr. Haddock came in

22  prior to receiving any discovery from the State at all

23  and gave his account of the events of that evening as

24  well as his accounts in great detail of five other

25  armed robberies as well as some additional details on

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 8 of 30

1   five or six additional armed robberies as well.

2                   However, he told us at that time that

3   he had not been present nor hadn't participated in the

4   December 2nd robbery that resulted in a homicide.

5   Although we were initially skeptical, the detective at

6   the Raleigh Police Department hit him pretty hard and

7   we walked away with the detective in this case and

8   Mr. Lively and myself believing him.  After Dariel gave

9   his initial statement -- at that point in time we had

10  the surveillance video and it was a high-quality video

11  as far as surveillance videos go but it -- both of the

12  suspects were masked and had they been uncovering their

13  faces by itself that video would not have sufficiently

14  identified anyone nor would we have gotten to them with

15  just that video.

16                  The folks who at that point had given

17  the information about who the initial four people were,

18  were the brother of the alternate defendant the shooter

19  in the case.  Steven Cooley's brother identified his

20  brother and Demario Williams.  Demario Williams's

21  brother identified the same two people as well as the

22  two in the vehicle.  And then the girlfriend of Kwamane

23  Everett who was actually the driver identified the two

24  in the video as well as who she believed to have been

25  in the vehicle including this defendant.

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 9 of 30

1           Ultimately, the shooter's brother I

2  believe would have recanted.  He was on the defense's

3  witness list.  I do not believe that ultimately he

4  would have been a cooperative witness.  The brother of

5  Demario Williams ultimately prior to trial was shot and

6  injured to the point that he had been in a wheelchair

7  and heavily medicated at all times.  His recollection

8  of who actually left the house that night is fuzzy at

9  best.

10          And the girlfriend of Kwamane Everett,

11  I'm not sure what she would have said, and I'm not sure

12  anything she said would have been believed.  So the

13  three people who initially placed Dariel at the scene

14  ultimately we did not have as witnesses.  However, with

15  Dariel's statement that he came in and gave -- and it

16  was one of the most complete and detailed statements I

17  have ever gotten from a defendant especially

18  considering he had no access to the discovery when he

19  gave that statement.

20          Ultimately, the other two individuals

21  involved then both the driver and Kwamane Everett and

22  the second person who went in participated in the

23  robbery.  Demario Williams also both agreed to

24  cooperate and gave statements not only that helped

25  identify the shooter but that confirmed for us that

Huseby, Inc.        www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 10 of 30

1   Dariel was not there and was not present on that

2   instance.

3              What I would say is that without

4   Dariel having done what he did to the extent that he

5   did it and when he did it we may not have ended up with

6   the same outcome in the homicide trial.  Ultimately,

7   all three of them Dariel Haddock, Kwamane Everett and

8   Demario Williams testified.  They worked very well and

9   very hard with us.  Semal Howard, she prepped for the

10  trial and they as far as criminal defendants testifying

11  in court, they testified very well.  They all presented

12  well.

13             I personally believe that we would not

14  have gotten there but for Dariel's cooperation.  The

15  victim in the case Majeed Warren the man who was shot

16  and killed, as we kind of delved in talking to the

17  witnesses that found him and that knew him was he was

18  beloved in that community.  He was known -- school

19  children knew him because he would pass out quarters if

20  they showed him good grades on their report cards.

21             The local adults who would wonder in,

22  he would cut them a break on prices of things if they

23  didn't have enough money.  We couldn't find a single

24  person that didn't have really great things to say

25  about him.  And that community I think suffered a

Huseby, Inc.                              www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 11 of 30

1 significant loss.  I think it would have been a great

2 injustice if we had not been able to convict Mr. Cooley

3 of killing him.

4                I think that we certainly could have

5 tried making the case but it would not have gone well

6 and it would not have been as strong without Dariel's

7 cooperation.  I've been a prosecutor for just over nine

8 years now and the statement that he gave not only was

9 the most complete and most helpful I have ever

10 received, his detail in recall is amazing which makes

11 this a very sad moment also because this young man has

12 the potential to do far, far better things with his

13 life.

14                I know he did not get far in college,

15 but he graduated high school which is more than I can

16 say for a lot of defendants that I deal with.  His

17 judgment and his reasoning ability; his intelligence is

18 too high for him to be here and that makes me very,

19 very sad.  But I believe he has the potential so he

20 chooses to take advantage of every -- of anything that

21 Your Honor would show him.  He has the ability to

22 become more than this and to move beyond this at some

23 point in this life.

24                The deal he received from the state is

25 that he plead guilty to five separate armed robberies

Huseby, Inc.                                   www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 12 of 30

 1  and that he -- there was no ultimate agreement about

 2  what his sentence would be except that he receive no

 3  less than 88 months.  He is not guaranteed that 88

 4  months.  Although, I will tell you, Your Honor, and I

 5  told Mr. Manning that based on his cooperation and his

 6  followthrough with that cooperation at trial I intend

 7  to ask for that number.  And I have every expectation

 8  that the trial judge who will be sentencing Modemele

 9  will follow that recommendation.  I know that, Your

10  Honor, you have the guidelines you are somewhat bound

11  by.

12              THE COURT:  I'm bound by mandatory

13  minimums, but I'm not bound by the guidelines.

14              MS. JANSSEN:  Okay.  It works a little

15  bit different.  What I would ask, Your Honor, is to

16  fashion a judgment that would allow him as close to

17  similar of our timeframe as you can see fit to give

18  him.  But most importantly I would ask that Your Honor

19  order to the extent that you can that his federal

20  sentence, whatever it might be, run concurrently with

21  his state sentence.

22              That was not -- obviously we didn't

23  have the power to build that into his state plea

24  agreement, but in conversations with his lawyer and

25  with himself he knows -- I think he knows that if

Huseby, Inc.                          www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 13 of 30

1    everything went well and he did what he said he was

2    going to do that we would be asking for that, and I

3    would ask Your Honor to do that.  If you have any other

4    questions about my interactions with him or the case at

5    all I would be happy to answer them.

6                    THE COURT:  I don't have anything.

7                    MR. BENNETT:  Your Honor, what I would

8    add is as to the case that we're here today, I became

9    aware very quickly that Mr. Manning was representing

10   Mr. Haddock in the state court.  We made contact and

11   Mr. Manning assured that Mr. Haddock was the first

12   person to come in in my case as well to provide

13   information.  I echo Ms. Janssen that in terms of our

14   case he's been complete; he's been truthful.

15                   You have Mr. Everett and Mr. Williams

16   still pending sentencing in front of you.  We're

17   waiting to get to that point and then we're going to

18   produce Mr. Cooley in this case.  The fact that he got

19   life in state court does not let him off the hook on

20   this case.  And we don't know what Mr. Cooley will do.

21   The evidence is overwhelming in this case.  But if for

22   some reason he chooses at trial you will see

23   Mr. Haddock again in that case.  And based upon the

24   representations that I've got I'm sure he would be an

25   excellent witness at that point too.  I want to echo

Huseby, Inc.                    www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 14 of 30

1  the recommendation.

2             You see my recommendation in the

3  motion, but I do want to echo particularly that we had

4  asked you to run it -- that you would recommend running

5  it concurrent to his state sentence.  We think that

6  with his level of cooperation that would be

7  appropriate.  While I'm up -- so I don't have to get up

8  again, the victims in this matter have been notified

9  and none have chosen to be present or speak to the

10  Court about it.

11             THE COURT:  Now, these armed robberies

12  in Wake County --

13             MR. BENNETT:  Again, I'll defer to

14  Ms. Janssen.

15             MS. JANSSEN:  Yes, sir.  They were --

16  once we focused in on this group there were a total of

17  16 armed robberies across five law enforcement agencies

18  in a period of -- I think the earliest we were able to

19  definitively tie this group was May of 2011 going

20  through -- they end obviously on January 8th of 2012

21  with the Food Lion robbery down in Greenville.

22             One or two of those we were able to

23  call out as not quite 100 percent sure was this group.

24  And when he came in and initially debriefed with the

25  Raleigh Police Department -- and I will say that that

Huseby, Inc.                                    www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208          (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 15 of 30

1    -- that's what he did.  He didn't give a proper -- he

2    came in and sat down with the detectives without any

3    kind of assurances or promises from our office before

4    he had seen the discovery and he gave information.

5                I specifically chose five to eight

6    armed robberies that I wanted details down to who did

7    what, where, when and he gave those details.  But

8    additionally he was able to fill in the blanks on up to

9    14 total armed robberies.  So we obtained as a result

10   of his information and subsequently Kwamane Everett and

11   Demario Williams pleading to some that they were

12   involved in that he was not.  We attained convictions

13   in seven additional armed robberies outside of a

14   homicide and were able to exceptionally clear another

15   seven.

16              MR. BENNETT:  And, Your Honor, again,

17   I had a similar case in front of you involving multiple

18   robberies where it was clear that one defendant's

19   cooperation helped trigger everything that happened

20   after that.  And in this particular case it's very

21   similar that either Mr. Haddock's cooperation in the

22   beginning helped set in motion all the ability to move

23   forward in this case then including most importantly

24   Mr. Cooley's conviction in that homicide.

25              THE COURT:  While I grant the motion

Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 16 of 30

1  it doesn't mean I'll accept the ultimate recommendation

2  that the government has made, but I will give

3  Mr. Haddock credit today for his substantial

4  assistance.  And because the motion has been made under

5  18 U.S.C. Section 3553(e) I am not bound by the

6  mandatory minimum.  With that I recognize Mr. Manning

7  to speak on behalf of Mr. Haddock.  I'll then hear from

8  Mr. Haddock.  I'll then hear from the government.

9  Mr. Manning.

10              MR. MANNING:  Your Honor, briefly with

11  respect to the 3553(a) factors the presentence report

12  is very accurate in terms of his upbringing.  His

13  mother is here.  I've spent a lot of time with her in

14  the last two years, and she did the very best that she

15  could do with her children.  And through high school

16  she did okay.  And she's been hanging in there with

17  this matter for the last two and a half years.  And

18  Dariel went sideways, Your Honor, and smoked a lot of

19  dope and got in with some of these older guys.  I can't

20  really say that they're a gang but they were behaving

21  in that fashion.  The people that ended up being

22  co-defendants in both sets of these cases in Greenville

23  were all the same folks.

24              THE COURT:  Are they all from Pitt

25  County?

**Huseby, Inc.**                    **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 17 of 30

1          MR. MANNING:  All from Pitt County.

2   And I think when it got a little hot in Greenville they

3   rented a house in Knightdale and came up here and it

4   was the same type of behavior in a new environment.

5   When the defendant called me I went to see Dariel right

6   away and told him what the facts of life were and we

7   immediately wanted to have a sit-down.

8               He told me that he was not involved in

9   the shooting.  He gave me significant detail and I

10  believed him enough to say -- I called Colleen and Matt

11  or whoever had the case at the time and said we want to

12  talk and -- they didn't know who shot John at that

13  point.  We sat down and, I must say, the first six

14  hours was excruciating but the detectives didn't

15  believe a word he said.  And over time -- there was a

16  short period of time it turned out that his amazing

17  memory brought him around because the -- in all these

18  robberies the people were wearing different clothes,

19  different colored clothes, different kinds of hats,

20  shoes.  And it turned out that they had a clothing box.

21  And every time they would go out they would put on

22  different outfits, use different weapons or they would

23  change weapons around and go and use different

24  vehicles.  And with the mask it was really -- the MO is

25  pretty much the same, but in terms of identifying

Huseby, Inc.                          www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 18 of 30

1    anybody it just wasn't going to happen.

2                    It was a very sophisticated

3    organization and he remembered colors, outfits from

4    discrete jobs that they did which just blew me away.  I

5    don't think I could remember things like that.  He

6    remembered everything that he ever did in Greenville or

7    Raleigh and who was along.

8                    I know that he's intelligent.  I know

9    that in the absence of marijuana in the last two years

10   his intellect has returned.  He's really a bright man.

11   Very bright.  And I think that he could be a success.

12   And now that he's had the time to reflect I think that

13   he will make it whatever happens here or whatever

14   happens in Superior Court.  I think when he comes out

15   as long as his mother is alive he's going to make it.

16                   I would ask the Court to honor the

17   government's recommendation if at all possible.  It is

18   true that between the two counties there is a string of

19   armed robberies; there's a string of people who have

20   had guns placed in their faces and money which was

21   taken.  And there's no going back or apologizing for

22   that other than what he's done to try and make amends

23   by his cooperation.  And by all accords I haven't seen

24   any single fact that's a variance from now that they

25   know the entire story.  He was spot on from the very

**Huseby, Inc.**                              **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 19 of 30

1 beginning.  There wasn't any pulling teeth to get him

2 to commit to that course.

3                 The only thing that is a minor matter

4 is the restitution in this case.  The proceeds of the

5 robbery were recovered in paragraph nine of page four

6 of five.  That money is still in practical matter in

7 evidence.  And I know the PSR recommends that

8 restitution be ordered, but that discrete amount of

9 money is in the control of the government until

10 everybody has been prosecuted and the case is closed.

11                 I don't know if the Court needs to

12 order it or not because I know that the money has been

13 converted to another form.  And I've never had a

14 situation where there was proceeds of a robbery that

15 still exist where the victim will be in a position to

16 get the money back.  That's the only matter that -- the

17 detail that I can see.

18                 One other thing and I'll be quiet.

19 Dariel has mentioned briefly in his presentence report

20 he has Type 1 diabetes.  He is completely insulin

21 dependent.  He gets four injections a day.  And when

22 the case first began and I first started representing

23 him the medical part of his life hadn't caught up with

24 his presence in the Wake County Jail, and he nearly

25 died as a result of not getting the insulin that he

**Huseby, Inc.**                         **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**         **(704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 20 of 30

1   needed.  And we had to move pretty quickly to get that

2   squared away.  Since then he's been maintained properly

3   and has checked his blood sugar four times a day and is

4   getting the right injections.

5                    Two days ago -- I don't know whether

6   it's in the state from the Wake County case or whether

7   the marshall has moved him to Franklin County.  When I

8   saw him over there yesterday they were just catching up

9   with that business.  And so looking forward as a

10  personal preference I would rather have him in federal

11  custody for whatever the sentence is going to be

12  because I think that he has a greater chance of

13  survival but just because of the level of medical care

14  and health care that's available in the Bureau of

15  Prisons as compared with the State Department of

16  Corrections.

17                    And if there's any way that the Court

18  can see its way to do that I think as a matter of his

19  personal survival it would be more likely that he would

20  be able to survive and finish whatever sentence is

21  imposed as contrasted with what may happen to him as a

22  result of his unique medical condition.

23                    THE COURT:  Do you want me to

24  recommend Butner?

25                    MR. MANNING:  I would ask if they have

**Huseby, Inc.**                    **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 21 of 30

1 a hospitable facility there and I would ask for Butner.
2 I don't know if he -- he may be the first one to go
3 over there and may have a chance of making it in there
4 because most of them have to be separated at some
5 point.
6              THE COURT:  Thank you, Mr. Manning.
7 At this time I'll hear from Mr. Haddock if you would
8 like to make a statement, sir.
9              MR. HADDOCK:  Yes, I would.  As I
10 stand before you I want to acknowledge responsibility
11 for what I did because at that time I knew what I was
12 doing was wrong.  I knew I shouldn't have been doing
13 it, but I can't make any excuses.  There ain't no
14 excuses for my behavior.  I can't make any excuses so I
15 accept full responsibility for what I did.  I can't
16 place the blame on nobody else.  I fell astray after
17 high school.  I lost some guidance.  I tried to make it
18 on my own but I see that that wasn't the way I should
19 have been doing it.
20              I would really like to settle with
21 what the Court gives me today because I know I've got
22 to pay for my actions.  I take responsibility for what
23 I did.  I just want to apologize to my family because I
24 shouldn't be standing here today.  I accept the
25 responsibility and the consequences.

```
 1                    THE COURT:  Thank you, Mr. Haddock.
 2   At this time I'll hear from Mr. Bennett if you want to
 3   add anything.
 4                    MR. BENNETT:  Your Honor, we've
 5   summarized everything you need to hear.
 6                    THE COURT:  Mr. Haddock, the Court
 7   recognizes its obligation to impose a sentence
 8   sufficient but not greater than necessary to comply
 9   with the purposes set forth in the statute.  I have
10   considered all arguments Mr. Manning has made on your
11   behalf.  I have considered your statement, sir.  I have
12   considered the position of the United States.  I have
13   considered the advisory guideline range.
14                    And among other things I have to
15   consider the nature and circumstances of the offense
16   and the history and characteristics of the defendant;
17   the need for the sentence imposed to reflect the
18   seriousness of the offense, to promote respect for the
19   law and provide just punishment; the need for the
20   sentence imposed to deter others who might choose to
21   engage in the criminal behavior that brings you here;
22   the need for the sentence imposed to protect the public
23   from further crime by you; the need for the sentence
24   imposed to provide you with needed education or
25   vocational training and medical care or other
```

**Huseby, Inc.**                                **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**    **(704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 23 of 30

1   professional treatment in the most effective manner.

2             The statute lists a number of other

3   factors.  I have considered all those factors although

4   I won't name each one individually.  As to the nature

5   and circumstances of the offense you did engage in this

6   robbery in aiding and abetting and then using or

7   carrying a firearm during the relation of a crime of

8   violence and aiding and abetting as reflected in Counts

9   1 and 2.  Each of those are serious offenses.

10            As for your history and

11  characteristics you are, as I understand it, a 2009

12  graduate of Rose High School in Greenville.  The

13  lawyers have described your intelligence.  You don't

14  really have much of a work history.  You obviously got

15  involved in smoking dope and engaging in robberies

16  which is obviously very serious conduct.  As I

17  understand it from the presentations, you tried to make

18  it right once all this came to light.  And I'll give

19  you credit for that today.

20            While balancing the reality of the

21  number of these robberies that you've participated in

22  and the offense conduct, the federal offenses

23  conviction, I am going to impose a sentence that will

24  provide just punishment.  You will get a lot of credit

25  today for the substantial assistance that you've

**Huseby, Inc.**                        **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 24 of 30

1   provided.  I can tell you that if a person didn't give

2   the substantial assistance that you gave and engaged in

3   the behavior that you gave, there have been a lot of

4   20-something year olds who have stood here and they go

5   on to prison to die.  That's not going to be what's

6   going to happen to you today, but you don't ever want

7   to come back here.  I can tell you that.  And the

8   choice is yours.

9                  All these people here, they can hope

10  for you.  They can't choose for you.  The choices you

11  make in life have consequences.  Sometimes those are

12  dramatic.  Some of the choices you've made have

13  resulted in dramatic consequences.  Some of those

14  consequences will be felt today.  They could have been

15  a lot worse, but because you have accepted your

16  responsibility I'll give you credit for that.

17                  I will impose a sentence that I think

18  moving forward will act with deterrence and provide

19  just punishment taking into account the serious nature

20  of the offense, the history and characteristics of this

21  defendant and all the other relevant sentencing factors

22  including the advisory guideline range.

23                  I have fully considered the entire

24  record in this case pursuant to the Sentencing Reform

25  Act of 1984 as abided by by the Supreme Court's

**Huseby, Inc.**                              **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 25 of 30

1    decision United States v. Bookers, the judgment of the

2    Court that the defendant Dariel Travointe Haddock is

3    hereby committed to the custody of Bureau of Prisons to

4    be in prison for a term of 41 months on Count 1 and 108

5    months on Count 2 served concurrently producing a total

6    term of 108 months.

7               Upon release of imprisonment you shall

8    be placed on supervised release for a term of three

9    years.  This term consists of two years on Count 1 and

10   a term of three years on Count 2 run concurrently.

11   Within 72 hours of release from the custody of Bureau

12   of Prisons you shall report in person to the probation

13   officer in the district in which you were released.  On

14   supervised release you shall not commit another

15   federal, state or local crime and shall not be in

16   possession of a controlled substance.  You shall not

17   own or possess a firearm.  If you do violate federal

18   law you will get caught and you will come back here and

19   you will go back to federal prison for a very long

20   time.

21               You shall comply with the standard

22   conditions with the district and the following

23   condition or conditions: You will participate in a drug

24   treatment program.  You will cooperate in the

25   collection of DNA.  You will consent to a local search

**Huseby, Inc.**                                    **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**    **(704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 26 of 30

1  in accordance with the standard condition or

2  conditions.  You will pay a special assessment of $200

3  which is due immediately.

4                  Mr. Bennett, what do you want to do

5  about restitution?

6                  MR. BENNETT:  I think Mr. Manning is

7  correct.  That money is in evidence so I don't really

8  think that restitution needs to be ordered.  It's

9  essentially recovered.  And as a conclusion of all four

10  defendants, we're going to release that money back to

11  Food Lion.

12                  THE COURT:  I'm not going to order

13  restitution on the government's representation that the

14  money that was all recovered from the proceeds of this

15  robbery will be returned to Food Lion at the conclusion

16  of these matters.  I'm not going to impose a fine in

17  this case.

18                  Mr. Haddock, you can appeal your

19  conviction if you believe your guilty plea was somehow

20  unlawful or involuntary or some other fundamental

21  defect that's not waived by a guilty plea.  You also

22  have a statutory right to appeal your sentence under

23  certain circumstances particularly if you think your

24  sentence is contrary to law.  You did enter into a plea

25  agreement that contained an appellate waiver.  From

Huseby, Inc.                              www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208    (704) 333-9889
Case 4:12-cr-00057-D  Document 176  Filed 01/16/15  Page 27 of 30

1   what I understand I believe you've waived your right to

2   appeal your sentence.  If you believe the waiver is

3   unethical or inapplicable for any reason you can

4   present that theory to the appellate court.  With few

5   exceptions a notice of appeal must be filed within 14

6   days of the judgement being entered on the documented

7   case.

8                    If you're unable to pay the costs you

9   can appeal in forma pauperis.  If you so request, the

10  Court will prepare and file a notice of appeal on your

11  behalf.  In accordance with the request of Mr. Manning

12  I recommend you attend substance abuse treatment.  I

13  recommend a medical evaluation and treatment for your

14  diabetes.  I recommend you serve your sentence at FCI

15  Butner.  I recommend that you not serve your sentence

16  with any of your co-defendants.  I recommend that you

17  be in primary federal custody, and if the state

18  sentence is concurrent then for you to serve your

19  sentence in federal custody.  I do recommend -- and it

20  can be requested on federal judgment -- that the

21  federal and state sentences run concurrently.

22                    MR. MANNING:  Thank you, Your Honor.

23                    THE COURT:  Anything else,

24  Mr. Manning?

25                    MR. MANNING:  No, thank you.

1                        THE COURT:  Anything else from the

2    government?

3                        MR. BENNETT:  No, Your Honor.

4                        THE COURT:  Thank you all counsel who

5    appeared here today for their work in connection with

6    this matter.  Mr. Haddock, good luck to you, sir.

7                        (Proceedings adjourned at 1:38 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Huseby, Inc.**                              **www.huseby.com**
**1230 West Morehead Street, #408, Charlotte, NC 28208**    **(704) 333-9889**
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 29 of 30

1                    REPORTER'S CERTIFICATE

2

3        I, Leslie Christian, court reporter, do hereby

4    certify that the pages contained herein accurately

5    refect the notes taken by me, to the best of my

6    ability, in the above-styled action.

7        This the 15th day of January 2015.

8

9

10                              Leslie Christian,

11                              Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Huseby, Inc.                              www.huseby.com
1230 West Morehead Street, #408, Charlotte, NC 28208      (704) 333-9889
Case 4:12-cr-00057-D   Document 176   Filed 01/16/15   Page 30 of 30